Good morning. I'm at Teeson Court, Lawrence Rolfing, on behalf of the appellant John Hall. It's been a long time. It has, Your Honor, and here I am pinch hitting for somebody else. There you go. Always a pleasure. John Hall is a developmentally disabled adult who, despite his problems throughout his life, has persevered and attempted to do what's expected of him, which is to engage in work activity. This chair was made for my grandfather. Oh. Don't use the floor. I'm with you. Please go ahead. Thank you. There are five pieces of evidence that are critical in this case. We have two psychological evaluations. We have a letter from a former employer. We have an employee performance evaluation from Sears, which is the longest job that Mr. Hall ever held. We have the testimony of the claimant and his parents. The administrative law judge basically found that because of the length of time that Mr. Hall performed the job at Sears, that he could disregard the totality of the psychological evidence taken as a whole, the consistent testimony of the claimant and his parents, and the consistent performance evaluation from Sears and the letter from the former employer, Mr. Tainer. It's a hard fact to get around. It is. And the government cited in its brief the case of Gregory, which stands for the proposition that if you've worked despite an impairment, we're going to assume the government is privileged to assume that you can continue to perform that kind of work activity. Or maybe that it's not such an impairment, that in evaluating the degree of impairment and looking at the evidence, you can discount it a little bit and say, well, you know, they're testifying this way, and of course they're his parents, so what are they going to say? The doctors are going to say, but here we have sort of a hard piece of evidence in the real world that, in fact, he can hold on a job for seven years, and, in fact, in the end, he wasn't fired. He left. He left under circumstances where he perceived that he would be fired. That's the evidence that we have. I think that the other case that speaks to that particular point, Judge Kaczynski, is the Gatliff case. In Gatliff, the individual had a series of short-term jobs, and this court properly found that a series of short-term jobs would never rise to the level of substantial gainful activity because they failed to meet the sustained requirement of that term of art, substantial gainful activity. I think that the line that we can draw between Gregory and Gatliff and the line that helps us discern the proper resolution of this claim is that when an individual engages in substantial gainful work activity, and clearly Mr. Hall engaged in substantial gainful work activity, that that will be characterized as past relevant work for purposes of disability evaluation when the person performed that work activity at a level that was satisfactory. Counsel, did Dr. Schwartz or Dr. Spencer find that Mr. Hall was disabled? They did not use the word disabled. That term has meaning under the code, does it not? It has meaning under the code, and as a practical legal matter, the commissioner discourages physicians from using the term disabled because it is the ultimate question of fact, because it carries with it legal ramifications, and when a doctor uses the phrase, my patient is disabled, I don't know if they're using the California State Disability of Workers' Compensation definition, their own personal definition, or the strict guidelines that are present under the Social Security Act and the regulatory scheme, the well-articulated and reticulated scheme that's present in the Social Security Act and the regulations promulgated thereunder. And so there is no doubt that given Dr. Schwartz's opinions in light of the vocational testimony that was rendered in this case, that Mr. Hall would not be expected to engage in substantial gainful activity, which is the test under Section 423 of the Act. So Dr. Schwartz didn't use the magic word disabled, but he used terms describing the functional capacity of Mr. Hall that leave no doubt to someone looking at this from the perspective of the Act and the regulations that Mr. Hall could never engage in successful, sustained, substantial gainful activity. But the question here, is it not, is that the ALJ has made certain determinations which you contend are contrary to what these physicians and other people say, right? Correct. The question is, did the ALJ do what was necessary to engage what the doctors said and the other witnesses said and come up with something contrary? So under the circumstances, what they said specifically, and particularly in terms of disability, is quite important because he made certain findings. I want to ask you another question, too. In the record, it seems pretty clear that this matter was previously appealed within the Department to the Appeals Council. Correct. And it was sent back. Was it sent back to the same ALJ that heard the case in this case? Yes, it was. It was. So this guy's had two shots at it, right? Or the ALJ's had two shots at him. And I'm referring to the ALJ. Yes. So you're wanting us to send it back to the same ALJ the third time. Well, if you had a choice, you'd probably have a different one, wouldn't you? Yeah. The commissioner's policy is to reassign it the third time. That policy is not enforceable. But the commissioner's policy is to reassign it to a third ALJ. Second ALJ the third time. Yes. Thank you. I'll ask you a couple of questions also. Dr. Schwartz's rating terms, the checkboxes he marked on the medical source statement, those rating terms, if they were correct, did the vocational experts say that based on those rating terms he could not perform significant work in the economy? Yes, he did. To what extent does that reflect the doctor's opinion that he's unable to work? I think that under the relevant standard, the case as a whole, the evidence taken as a whole, that that is clear, a clear statement from Dr. Schwartz that Mr. Hall is, in fact, unable to engage in work activity that the vocational expert, either vocational expert, could identify. And so Dr. Hall has stated clearly, in light of the totality of the evidence, that Mr. Hall is disabled. Is there any evidence from Sears, other than the old letter, which said he really was very reliable, but he performed below the standards, but they seemed to like him, even though his work wasn't good enough to hold a job normally, at least he showed up. But that was at the very beginning. Is there any evidence from Sears during the course of that seven years? There isn't any evidence in this record, Your Honor. And candidly, I would have preferred to see that kind of evidence rather than the perceptions of Mr. Hall in his testimony stating that what he perceived was happening to him the latter time that he was with Sears. I would have preferred, I think the Court would have preferred to see that as well. But we do have this document, and we do have the statement. But after this, they kept him for five or six years. Correct. We don't know, one way or the other, whether he had a disciplinary file. No, we don't. This is the evidence you're rebutting to that's not in the record. Right. So if there were notices of deficiency or counseling sessions or anything of that sort. Correct. We don't know about that. We don't know that there was anything like that either. That's true. Whose obligation is it when the claimant has counsel to develop the facts in the record? Is it an obligation on both sides or just on the claimant? Well, Your Honor, this is a non-adversarial proceeding, and despite the presence of counsel under the Brown case, the government does have an affirmative obligation to assist in developing the record. And if the administrative law judge perceived a deficiency, at a minimum, he should have alerted counsel at that time to collect the records or assisted the claimant in collecting those records from Sears. I do think this is a very sort of large gap and deficiency in the record. We really don't know what kind of a job he was doing at Sears, whether he could do the job or not, other than his testimony that he perceived that he was going to get fired and whether that was because of something, just because he was a new manager or whether it was because he had a particular problem at the end or whether he really – there are all kinds of explanations for that, and there's no real evidence. Except that he worked. We do have the evidence that he worked. And I think the most important thing to remember about Mr. Hall's personal testimony and the fact that he worked and his statement that he perceived that he would be fired is the opinion from Dr. Spencer, which predates the period of disability that we're discussing, is that while this client seems to have no insights as to why he had difficulty maintaining work, he does not blame his employers. This is a young man who is so wholly lacking in the sophistication of the workplace that he doesn't understand that the criticisms of his inability to follow directions, his inability to be efficient, to keep up the thrum of the work pace that is the hallmark of unskilled employment, that he doesn't even understand why he's having problems, although people are critical of him. And for a person that Dr. Spencer describes in 1983 to have the problems in 1991 that Mr. Hall describes in his testimony, that is consistent with the initial performance evaluation from Sears shortly after he started working for the company. And then we have the later opinion of Dr. Schwartz. It really does run a thread of consistency. And, of course, the court can always remand for the purposes of obtaining the balance of Mr. Hall's personnel file, which would certainly be done under remand if the court were to choose that remedy. I would like to reserve the balance of my time. Your balance is minus a minute and a half. Oh. Thank you. We'll give it to you the next time you show up. Yeah. We call this signed numbers. May it please the court. I'm Jacqueline Forslund, and I'm appearing on behalf of the commissioner. Substantial evidence supports the conclusion that as of claimant's DOI of June 1996, he was able to perform his past relevant work of stock clerk, retail clerk, and driver. There is no evidence that his impairments have worsened since he performed this work. Did Dr. Schwartz find that his abilities were markedly limited in a whole range of areas, which a vocational expert then said meant that he was incapable of performing work? The ALJ rejected Dr. Schwartz's opinion based in part on the fact that claimant was able to successfully work for seven years. But if you accepted Dr. Schwartz's opinion, then he was disabled. Based on the VE's testimony, yes, that would support that conclusion. So it really comes down to the fact that the ALJ rejected it. And the real evidence is that he was able to work for the seven years. And it is, I would say, at least somewhat unfortunate that we really don't know what went on during that seven years, whether he was someone incapable of doing the work whom they retained for some reason, even though he couldn't really do it, or whether he really was doing a remarkably good job. We have no idea, do we? Or maybe just an idiocra job, just enough to get by without... Well, I was trying to give you the extremes. It could have been anything. We have no idea, really, what happened during that seven years. Claimant indicated that he did need help from co-workers occasionally. That's the only indication of any kind of accommodation that's in the record. His parents did not state, did not testify that claimant needed accommodation at Sears. The work report from 1987 from Sears does not indicate that this was an accommodated employee. And he met expectations in a number of areas. He was below expectations in a number of areas, but above expectations. Well, the general comment, as I remember, was below expectations. Overall. Yeah, overall, yeah. That may describe half the high school population in certain large areas. That's a good point, because according to... You think Sears' general crew was below expectations? I don't know, Your Honor. Dr. Spencer noted that claimant had been in special education in elementary school, but apparently he was mainstreamed in high school, although on a slower track, and he was able to graduate from high school. She said he had good academic skills. And his reading... Shouldn't somebody have said during this hearing, he'd been working for seven years, was he able to do the work? Was he not able to do the work? Isn't that really... I mean, the whole case seems to be based on the fact that he did work, and there's no evidence as to how well he did, or whether he was incapable of working, other than the fact that they retained him. Did the ALJ have an obligation to develop that information? Well, as I said, first of all, claimant's credibility was not at issue before the district court and is not at issue now. Claimant's parents did not testify that he was accommodated. Claimant was represented by an attorney at the hearing who could have indicated some development of the record was necessary or could have made some effort. I agree with you that his attorney could have done a better job, to put it mildly, of developing the record. The question is whether the ALJ also had an obligation under the law to develop those facts. Based on the work evaluation from 1987, there was no indication that this employee was accommodated. Therefore, there was nothing that would trigger a duty to develop the record further. Yeah, unless we cast a spurs on absent counsel here, the counsel may have done the best he could with what he had available. It's entirely possible that the counsel looked at the history of their father and see if there was anything helpful there. I don't know what the facts are. I'm just assuming she didn't necessarily cast a spurs on something she didn't want to do. No, Your Honor. You were not at the hearing, right? No. So you won't handle these things once they come to you? That's correct, when they're appealed to federal court. In fact, the government is not represented in the hearing, right? It's a... It is non-adversarial. It's not adversarial. That's correct, Your Honor. The claimant and the claimant's witnesses and the vocational expert usually. That's right, Your Honor. Now, a claimant did testify that he was not a... Did you go to the beauty hall and send the case back to see whether there was any evidence about the disciplinary, the performance in general, or the performance file from Sears? Other than the fact that there was nothing in the record that gave rise to a duty to develop the record in the interest of administrative finality. The V.E. testified that a claimant not only could perform his past relevant work, he could perform other work in the national economy, unskilled work, such as labor. Not if the doctor was correct. That's presuming that the LJ's RFC finding is correct, because that was the hypothetical. Let's say there were evidence about what happened at Sears. It shows that for the better part of the seven years there, he was skating on the edge of being fired. Counseling sessions were inadequate. Performance evaluations were inadequate. It looked like he was about to lose his job. Let's say that evidence were there in the record. Could the LJ still have come to the conclusion it did? The LJ would have to make a finding of fact based on the evidence that was before him. I could only speculate that the LJ could come to the same conclusion. That's right. He would have to make a finding of fact based on that evidence. But in fact, in this case, like in all the others that we get, people have made a record or not made a record in the court below. And the issue here is simply whether there was clear and convincing evidence to allow the ALJ to make findings that were contrary to some of the other testimony, particularly that of the doctors. And as you review the record, it appears that the appeals counsel sent this back to what we now know is the same LJ. He had made a decision in August 13, 2001, finding no severe impairment. Apparently the appeals counsel felt that the record needed to be fleshed out in some way, perhaps what Judge Reinhart is suggesting. They did send it back on August 10 for further proceedings, and they had a supplemental hearing on November 6, 2002, in which all these people testified. So with that admonishment, it came back. There was a full record of whatever was there done. And the question before us, as I said, is whether there was clear and convincing evidence. Do you know of any evidence other than what is contained or referred to, rather, in the briefs themselves that would suggest in any way that there was not clear and convincing evidence that would allow the ALJ to distinguish and find otherwise than what the doctors testified? No, I know of no other evidence, Your Honor. I would like to distinguish the Gatliff case, which was mentioned by appellant. In that case, there were a series of short-term jobs. Well, in this case, Klayment was able to work for seven years. Now, the ALJ did reject some of Dr. Spencer's findings. She predicted that Klayment may have difficulty working independently and understanding what was expected of him. But according to the Sears evaluation, he was able to work responsibly with only moderate supervision, and he was able to take initiative to move from one task to another. So his demonstrated ability to work contradicted Dr. Spencer's predictions. I'm almost out of time. As noted by the district court, Klayment was less than a model employee, but he was able to work for seven years and was not fired by Sears. The district court found that this evidence was compelling, and we also submit that this evidence is compelling and ask the court to affirm the district court's decision. Are there any other questions? Thank you, counsel. Thank you. I will let you take a minute out of your bank from the next case. If you're lucky, you won't get the same panel, so the court won't remember that you were fired. Well, I would fess up, Your Honor. You know, Mr. Lawson, after many years of watching you, I know you would do exactly that. Thank you. One thing I wanted to respond to is the question about the interest of administrative finality. There is a strong interest in administrative finality, but there's also an interest in assuring that the safety net that the Social Security Act represents does not have such holes in the net that it lets people fall through. This claim was filed late. Mr. Hall sought benefits late in the day. If he doesn't prevail on this claim based on this record, his work experience at Sears becomes non-relevant legally, and he just goes on SSI based on Dr. Schwartz's report. The interest in administrative finality, as opposed to putting on welfare benefits or giving him the benefit that he earned by persevering, I think, outweighs the interest in administrative finality, and that the interest in making the correct decision is more persuasive in this case. But in this case, don't you have someone here, at least from what I gather in the record, this gentleman has a case that is typical of literally tens of millions of people in this country who are similarly mentally, sociologically, and educationally situated. Is it your contention that in order to take care of this gentleman, who admittedly has a very sad situation, that we should award this to him, which would basically provide a precedent for tens of millions of people who have marginal skills to be treated as disabled? Isn't that what we're dealing with here? People that are retarded, which Mr. Hall is not, can and do work. People that are borderline functioning can and do work. The question that we have to face in light of GATLF and other cases like GATLF across the country, for the million or so claims that are filed every year, and millions of people that are similarly situated to Mr. Hall in terms of his intellectual and emotional capacity, is do we consign them to serial unemployment? And that's what the GATLF case talks about, is that in reality the bottom line is we don't consign people like Mr. Hall, who have tried, to serial unemployment, whose capacity has proven time and time again not to be sufficient. And yet, in fact, he did work. It's a little bit like the taming of the shrew. Is it the sun or the moon? He worked. Did he not? And if I stand out in the rain long enough, eventually I'll get struck by lightning. I suppose that's possible too. I'm out of time again, Your Honor. Thank you. Thank you. The case is arguably submitted. The next case on the calendar is Perfect Ten v. Visa. Thank you.
judges: Reinhardt, Kozinski, Smith